UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFREY ROOT,

                Plaintiff,                      Case No. 1:22-cv-240

v.                                        Honorable Paul L. Maloney

J. JONES et al.,

                Defendants.

_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Parties #1 and #2. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's (i) official capacity claims, (ii) First Amendment free exercise claims, (iii) Religious Land Use and Institutionalized Persons Act (RLUIPA) claims, (iv) Fourteenth Amendment due process claims, and (v) First Amendment retaliation claims.

Plaintiff's First Amendment claims against Defendants Jones, Stephens, Rurka, Dirschell, and Mittelstadt in their individual capacities regarding the rejection of his mail remain in the case.

**Discussion**

## I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LCF officials: Mailroom Officers J. Jones and M. Stephens; Administrative Assistant to Deputy Warden Unknown Rurka; Prison Counselor Unknown Dirschell; Business Office Officer S. Mittelstadt; Unknown Party #1, named as John Doe; and Unknown Party #2, named as Jane Doe.

In Plaintiff's complaint, he alleges that Defendant Jones rejected a book in Arabic that Plaintiff had ordered "for [being] a security threat." (Compl., ECF No. 1, PageID.4–5.) Specifically, Plaintiff states that a book titled, "The [B]ook of Easy Arabic Grammar," that he had ordered from Amazon—which he contends is an approved MDOC vendor—was rejected even though "the book was not on Defendants['] restricted incoming book lists." (*Id.*, PageID.5–6.)

Plaintiff states that he is a Muslim (*id.*, PageID.4), and he indicates that this book "is necessary for a Muslim to be able to read and recite their Five Daily Prayers and Qur'an and maybe be the chaplain helper in leading Muslim prayers." (*Id.*, PageID.6.) Further, Plaintiff states that by confiscating his "Arabic books," he was prevented "from learning to read [his] Holy Qur'an in Arabic[,] [w]hich is a mandate requirement for Muslims." (*Id.*, PageID.4.)

Plaintiff contends that Defendants Jones, Stephens, Dirschell, Rurka, and Mittelstadt "upheld untrue statements to justify Defendant J. Jones['s] confiscation of [his] religious books" by saying that the MDOC's prisoner mail policy prohibits "mail written in code or in a foreign language which cannot be screened by institutional staff" or mail that "prisoners may use to learn

a new language to speak in which staff does not understand." (*Id.*, PageID.4–5.) Plaintiff also contends that Defendants Dirschell and Mittelstadt "claim[ed] that [o]fficials in Lansing said that foreign dictionaries[] and publications that teach a foreign language [are] a threat to the good order and security of the facility." (*Id.*, PageID.4.) However, Plaintiff claims that "[o]fficials in Lansing never stated that." (*Id.*, PageID.6.) Plaintiff alleges that the "Arabic foreign language books were not rejected because they . . . violated any Policy Directives or Rules," but that "[t]hey were rejected because they were Arabic books to help [Plaintiff] understand the words of God." (*Id.*, PageID.5.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First and Fourteenth Amendment rights, as well as his rights pursuant to RLUIPA, 42 U.S.C. §§ 2000cc, *et seq*. Plaintiff requests "a mediation hearing" and a trial by jury. (*Id.*, PageID.9.) As relief, Plaintiff requests compensatory, punitive, and nominal damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

3

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Defendants Unknown Parties #1 & #2

In the case caption of Plaintiff's complaint, he lists Unknown Party #1, named as John Doe, and Unknown Party #2, named as Jane Doe, as Defendants (*see* Compl., ECF No. 1, PageID.1); however, Plaintiff fails to include any factual allegations regarding these Defendants in the body of his complaint. (*See generally id.*)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how

any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For this reason alone, Plaintiff's claims against Defendants Unknown Parties #1 and #2 may be dismissed.

Moreover, to the extent that Plaintiff intended to name the "Officials in Lansing" that he references in his complaint as Defendants Unknown Parties #1 and #2, Plaintiff fails to allege that these unnamed officials engaged in any active unconstitutional conduct. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

For all of these reasons, Plaintiff's claims against Defendants Unknown Parties #1 and #2 will be dismissed.

### B.    Official Capacity Claims Against Remaining Defendants

Plaintiff indicates that he is suing Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only damages,[1] and the Defendants in this action are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims against Defendants in their official capacities.

### C.    First Amendment Right to Receive Mail

Plaintiff alleges that Defendants Jones, Stephens, Rurka, Dirschell, and Mittelstadt violated his First Amendment rights when they rejected his Arabic grammar book, which he had ordered from Amazon, "for [being] a security threat." (Compl., ECF No. 1, PageID.4–6.)

---

[1] The Court notes that in the "Relief" section of Plaintiff's complaint, he also states that he "request[s] a mediation hearing" and a trial by jury. (Compl., ECF No. 1, PageID.9.) These requests are directed to the Court, and they do not seek to restrain Defendants in any manner. Therefore, with respect to the relief that Plaintiff seeks from Defendants, he seeks only monetary damages. (*See id.*)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89–90. At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court cannot dismiss Plaintiff's First Amendment claims regarding the rejection of his mail.

### D.  First Amendment Free Exercise Clause & RLUIPA

Plaintiff alleges that the rejection of his Arabic grammar book violated his rights under the First Amendment and RLUIPA because he was "stop[ped] from learning to read [his] Holy Qur'an

in Arabic," which he states "is a mandate requirement for Muslims." (Compl., ECF No. 1, PageID.4; *see id.*, PageID.5–6.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at \*2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious belief that reading Arabic is part of his religious practice as a Muslim. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir.

2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on

religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened.

### 1.    Free Exercise Clause

In Plaintiff's complaint, he alleges that Defendants rejected his Arabic grammar book not because it violated "any Policy Directives or Rules," but "because [the book was an] Arabic book[] to help [Plaintiff] understand the words of God." (Compl., ECF No. 1, PageID.5.) Although Plaintiff contends that the rejection of the Arabic grammar book "stop[ped] [him] from learning to read [his] Holy Qur'an in Arabic[,]" Plaintiff acknowledges that "Arabic [d]ictionaries, [and] [c]assette [t]apes are accessible for use in the Chaplain Muslim Libraries and [are] available for purchase through JPay." (*Id.*, PageID.4–5.) Plaintiff also acknowledges that the warden at the facility "approved a religious yearly book allotment[] through the Inmate Benefit Fund and the chaplain allow[s] Muslims to order Muslim[] religious books printed in Arabic and translated in English." (*Id.*) Further, Plaintiff states that "prisoners have been allow[ed] to have Arabic

Qur'an[s] translated into English and many other books written in Arabic and translated in English." (*Id.*, PageID.8.)

In light of the other ways in which Plaintiff may obtain and use other books—such as Arabic dictionaries and "books printed in Arabic and translated in English"—to assist in his learning Arabic, Plaintiff fails to show that the rejection of this Arabic grammar book burdened— much less substantially burdened—Plaintiff's practice of his religion. At most, Plaintiff's inability to receive this particular Arabic grammar book appears to be a de minimis burden on Plaintiff's ability to learn Arabic, which he states is part of his religious practice as a Muslim. *See Bennett v. Burt*, No. 1:16-cv-1203, 2016 WL 7034240, at *4 (W.D. Mich. Dec. 2, 2016) (collecting cases that support the proposition that "[b]urdens that are less than substantial or isolated are not of constitutional dimension" (citations omitted)); *see also Townsend v. Ouellette*, No. 1:17-cv-935, 2018 WL 286427, at * (W.D. Mich. Jan. 4, 2018) (same). Plaintiff's First Amendment free exercise claims will therefore be dismissed.

## 2.    RLUIPA

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011);[2] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of

---

[2] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

action against state officials in their individual capacities . . . .").[3] Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 at 71; *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the United States Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

Plaintiff sues Defendants in their individual and official capacities, and he seeks only monetary damages in this action. (Compl., ECF No. 1, PageID.2, 9.) As noted above, Plaintiff may not maintain a RLUIPA claim against Defendants in their individual capacities, and he may not maintain claims for monetary damages against Defendants in their official capacities. Therefore, Plaintiff's RLUIPA claims will be dismissed.

### E.    Fourteenth Amendment Due Process Clause

Plaintiff contends that his due process rights were violated when the Arabic grammar book that he had ordered from Amazon was rejected, and he was unable to receive it. (Compl., ECF No. 1, PageID.4–5.)

---

[3] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

To the extent that Plaintiff intended to allege a procedural due process claim, Plaintiff must present sufficient facts to show the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

It is clear from Plaintiff's complaint and the attachments to his complaint that he received the process to which he was due. Plaintiff received a notice of mail rejection for his book. (ECF No. 1-1, PageID.13–14.) Additionally, Plaintiff requested a hearing and was provided that hearing, where he had opportunities to challenge the rejection. (*See id.*, PageID.13–14, 20.) MDOC Policy Directive 05.03.118 also allows for appeal of the decision. MDOC Policy Directive 05.03.118 ¶¶ EEE, FFF (eff. Mar. 1, 2018). Because Plaintiff received the process to which he was due, his Fourteenth Amendment procedural due process claims will be dismissed.

Furthermore, any intended due process claim regarding Plaintiff's property is barred by the doctrine set forth in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v.*

*Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Case 1:22-cv-00240-PLM-SJB ECF No. 7, PageID.53 Filed 05/26/22 Page 15 of 16

Accordingly, for all of the foregoing reasons, Plaintiff's due process claims against Defendants will be dismissed.

### F.    Retaliation

Plaintiff states in a conclusory manner that he "believe[s] [the rejection of his book] was retaliation because of the new religious Policy Directive 0.5.03.150." (Compl., ECF No. 1, PageID.8.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim fails at the first step. Retaliation is easy to allege but it can seldom be shown by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial"

(internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff fails to allege that he engaged in any protected conduct. Instead, he alleges that the retaliation was because the MDOC issued a "new religious Policy Directive." (Compl., ECF No. 1, PageID.8.) However, nothing in the complaint suggests that Plaintiff himself engaged in any protected conduct that resulted in retaliatory action against him. Plaintiff therefore fails to state a First Amendment retaliation claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Unknown Parties #1 and #2 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's (i) official capacity claims, (ii) First Amendment free exercise claims, (iii) RLUIPA claims, (iv) Fourteenth Amendment due process claims, and (v) First Amendment retaliation claims. Plaintiff's First Amendment claims against Defendants Jones, Stephens, Rurka, Dirschell, and Mittelstadt in their individual capacities regarding the rejection of his mail remain in the case.

An order consistent with this opinion will be entered.

Dated:   May 26, 2022                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge